**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| PANKAJ MERCHIA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.  23-3913 (RC) |
| | ) | |
| HARVARD PILGRIM | ) | |
| HEALTHCARE, INC. *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

Plaintiff Pankaj Merchia, appearing *pro se*, sues Massachusetts-based Harvard Pilgrim

Healthcare, Inc. ("HPHC") and parent company Point32Health for defamation.   Pending is

Defendants' Motion to Dismiss Plaintiff's First Amended Complaint ("Am. Compl.") for lack of

personal jurisdiction, improper venue, and failure to state a claim.   For the following reasons,

Defendants' motion based on personal jurisdiction is granted, and Plaintiff's motions are

denied.[1]

**II.   BACKGROUND**

On December 15, 2022, Plaintiff "was indicted for claims to Defendant that obscured his

familial relationship through the use of the name of CPAP supply company to circumvent the

family member exclusion."   Am. Compl. ¶ 66, ECF No. 30 at 16.   As a result, Plaintiff, who

"was the medical director of the CPAP supply company at the time," *id*. ¶ 105, is facing charges

in the U.S. District Court for the District of Massachusetts of health care fraud, money

---

[1]  The jurisdictional defect of the complaint renders moot Plaintiff's motions except for his motion to amend the
complaint and motion for sanctions discussed *infra* at 10-12.

laundering, conspiracy to defraud the Internal Revenue Service, and tax evasion. *United States v. Merchia*, 2024 WL 1678152, at *1 (D. Mass. 2024). In the criminal case, "[t]he government alleges, among other things, that Dr. Merchia devised and executed a scheme to defraud a health care benefit program by billing for services for Family Member 1 in violation of express exclusions provided by Health Insurer 1," *id*., which Plaintiff identifies here as Defendant HPHC, Am Compl. ¶ 92. Although Plaintiff "was a sleep medicine physician licensed in Massachusetts, Florida, and/or Virginia," *Merchia*, 2024 WL 1678152, at *1, he allegedly "was a licensed physician in Maryland and/or Virginia" at "all" times "relevant" to this defamation suit, Am. Compl. ¶ 14.

The events leading to the criminal prosecution form the basis of this civil suit. Plaintiff alleges that on November 26, 2019, "Defendant wrote to the [Massachusetts] Insurance Fraud Bureau (IFB) that [he] had committed 'Fraud; False Billing'." *Id*. ¶ 65 (citing Compl. Ex. 2061, ECF No. 254-268); *see also* Compl. Ex. 2062, ECF No. 270-72 (form report). Plaintiff "was ordered to fly from his home in Florida to Boston," Am. Compl. ¶ 67, and on December 20, 2022, "was handcuffed and arrested after which a press release was issued nationwide defaming him and his teenage children who share the same last name," *id*. ¶ 68. According to Plaintiff, Defendant "accused" him "of committing healthcare fraud to the . . . IFB," *id*. ¶ 85, with "no good faith basis to believe that [he] committed any fraud or illegal act in relation to Defendant," *id*. ¶ 93, and it "knew, or should have known that reports of fraud to the IFB" could "lead to criminal prosecution," *id*. ¶ 88. Plaintiff suggests that Defendant holds sway over the criminal prosecution, *see id*. ¶¶ 89-99, but has "made no effort to stop" the prosecution or "to have Count One of the indictment . . . dismissed," *id*. ¶¶ 100-101.

2

Plaintiff alleges that since his indictment and arrest, he and his children "have been socially and professionally ostracized," and he has suffered "humiliation," "emotional distress," and "countless" losses, including of "reputation," "enjoyment of life," "business opportunities," and "earning capacity."   *Id*. ¶¶ 103-104, 111-112.   Plaintiff seeks "damages . . . resulting from HPHC's intentional malicious false accusations."   *Id*. ¶ 126; *see* ECF No. 1-1 (Civil Cover Sheet listing demand as "$ >75,000").[2]

## III.   LEGAL STANDARD

"Jurisdiction to resolve cases on the merits requires both authority over the category of claim in suit (subject-matter jurisdiction) and authority over the parties (personal jurisdiction), so that the court's decision will bind them."   *Ruhrgas AG v. Marathon Oil Co*., 526 U.S. 574, 577 (1999).   Although a federal court typically "first resolves doubts about its jurisdiction over the subject matter," there is "no unyielding jurisdictional hierarchy" precluding priority to the "personal jurisdiction inquiry."   *Id*. at 578.   And when "personal jurisdiction is in question, a court must first determine that it possesses personal jurisdiction over the defendants before it can address the merits of a claim," *Kaplan v. Central Bank of the Islamic Republic of Iran*, 896 F.3d 501, 510 (D.C. Cir. 2018), or "questions of venue" absent a "sound prudential justification" for

---

[2]  As part of a court's obligation to construe *pro se* filings liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and absent undue prejudice to a party, "all factual allegations by a *pro se* litigant, whether contained in the complaint or other filings in the matter, should be read together in considering whether to grant a motion to dismiss," *Hill v. Smoot*, 308 F. Supp. 3d 14, 19 (D.D.C. 2018) (citing *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999)); *see Brown v. Hill*, 573 F. App'x 3 (D.C. Cir. 2014) (per curiam) (remanding case to district court to reconsider the dismissal of *pro se* complaint for lack of subject-matter jurisdiction in view of citation to civil rights statute in "the civil cover sheet accompanying the complaint").

addressing venue first, *Dimondstein v. Stidman*, 986 F.3d 870, 871 (D.C. Cir. 2021) (per curiam).

On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the "burden of establishing a factual basis for the exercise of personal jurisdiction over [each] defendant." *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990); Fed. R. Civ. P. 12(b)(2); *see also Second Amendment Foundation v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001) ("a plaintiff must make a *prima facie* showing of the pertinent jurisdictional facts") (cleaned up)). The Court resolves factual disputes in the plaintiff's favor "[w]hen deciding personal jurisdiction without an evidentiary hearing," but the Court "need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts." *Livnat v. Palestinian Auth.*, 851 F.3d 45, 57 (D.C. Cir. 2017) (cleaned up). In addition to the pleadings, the Court may consider other evidence, such as affidavits. *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005).

Plaintiffs must establish that the Court has personal jurisdiction through either general jurisdiction or specific jurisdiction. *Erwin-Simpson v. AirAsia Berhad*, 985 F.3d 883, 888-89 (D.C. Cir. 2021). General jurisdiction "permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit." *Id.* at 889 (cleaned up). Specific jurisdiction is narrower and "depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* at 888 (cleaned up). The Court's exercise of specific jurisdiction must satisfy the Due Process Clause of the U.S. Constitution and, in this case, the District of Columbia's long-arm statute. *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000). Thus, "a plaintiff must show 'minimum contacts'

4

between the defendant and the forum establishing that 'the maintenance of the suit does not

offend traditional notions of fair play and substantial justice.' " *Id*. (quoting *Int'l Shoe Co. v.

Washington*, 326 U.S. 310, 316 (1945)).

## IV. ANALYSIS

Defendants argue that the Court lacks both general and specific jurisdiction.   *See* Mem.

of P. & A., ECF No. 32 at 6-12.   The Court agrees.

### A.   General Jurisdiction

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction

over persons."   *Erwin-Simpson*, 985 F.3d at 888 (quoting *Daimler AG v. Bauman*, 571 U.S. 117,

125, 134 S.Ct. 746, 749 (2014).   In a diversity case like this, "the federal district court's

personal jurisdiction over the defendant is coextensive with that of a District of Columbia court."

*Helmer v. Doletskaya*, 393 F.3d 201, 205 (D.C. Cir. 2004).   A "District of Columbia court may

exercise personal jurisdiction over" an entity "organized under the laws of, or maintaining . . . its

principal place of business in, the District of Columbia as to any claim for relief."   D.C. Code

§ 13-422.   Such general or all- purpose jurisdiction " 'sets a high bar,' requiring that the

defendants' affiliations with the State are so 'continuous and systematic' as to render them

essentially at home in the forum State."   *Brit UW, Limited v. Manhattan Beachwear*, LLC, 235

F. Supp. 3d 48, 54, 60 (D.D.C. 2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v.

Brown*, 564 U.S. 915, 919 (2011)) (other citations omitted)).   "Only a select 'set of affiliations

with a forum' will expose a defendant to such sweeping jurisdiction."   *Ford Motor Company v.

Montana Eighth Judicial District Court*, 141 S.Ct. 1017, 1024 (2021) (quoting *Daimler*, 571

U.S. at 137).   Corporate defendants are paradigmatically 'at home' at either their place of

incorporation or principal place of business." *Brit UW, Limited*, 235 F. Supp. 3d at 60 (quoting *Daimler*, 134 S.Ct. at 749).

It is undisputed that Defendants are incorporated in Canton, Massachusetts, which is also their principal place of business. *See* Decl. of Jonathan Bove, ECF No. 32-2 ¶¶ 4, 11; Am. Compl. ¶¶ 17-22 (asserting that Defendants "merged in or about 2021," and have "the same principal registered address of 1 Wellness Way, Canton, MA," the same "board of directors," and the same "CEO"). Additionally, Defendants neither offer nor underwrite insurance policies in the District of Columbia, Bove Decl. ¶¶ 7-8, 13, 15, and the alleged wrongdoer, HPHC, "operates" primarily "in the New England region of the United States," *id*. ¶ 12, "does not contract with healthcare providers in the District of Columbia," *id*. ¶ 16, "has never had a physical office in the District of Columbia," *id*. ¶ 17, and "is not registered to do business in the District of Columbia," *id*. ¶ 19.

Plaintiff counters that HPHC "has continuous and systematic contacts" by "purposefully advertising that it provides health insurance to members 'from coast to coast' which includes D.C.," and "maintaining a network of contracted providers" he contends are HPHC "agents" who, among other services, receive "payments" from HPHC and are subject to "terms negotiated with HPHC" and HPHC's "treatment guidelines" when servicing its members in D.C. Pl.'s Opp'n to Def.'s Mot. to Dismiss, ECF No. 39 at 10-11. Plaintiff speculates that HPHC "pays more than hundreds of thousands of dollars each year to providers in D.C. for services delivered in D.C." and "receives more than hundreds of thousands of dollars in revenue from at-risk insured groups and purchasers of its PPO type insurance policies for goods and services delivered in D.C." *Id*. at 12. But a "stream of commerce" connection between the forum and

the foreign corporation "is an inadequate basis for the exercise of general jurisdiction."

*Goodyear*, 564 U.S. at 919; *see Brit UW, Limited*, 235 F. Supp. 3d at 60 (a "corporation is not

'essentially at home' merely because it uses the stream of commerce to deliver products to the

forum state") (quoting *Goodyear*, 564 U.S. at 927).   At most, "[f]low of . . . products into the

forum . . . may bolster an affiliation germane to specific jurisdiction."   *Goodyear*, 564 U.S. at

927; *see id.*, quoting *Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distributors Pty. Ltd.*,

647 F.2d 200, 203, n.5 (D.C. Cir. 1981) ("defendants' marketing arrangements, although

'adequate to permit litigation of claims relating to [their] introduction of . . . wine into the United

States stream of commerce, . . . would not be adequate to support general, 'all purpose'

adjudicatory authority").

   Even if Defendants were "doing business in the District," D.C. Code § 13-334(a),

exercising general jurisdiction "is contingent upon [the] corporation having been served" in the

District "through the agent of the corporation or person conducting its business, or, [if absent]

and cannot be found, by leaving a copy at the principal place of business in the District, or,

where there is no such place . . . , leaving a copy at the place of business or residence of the agent

in the District."   *Okolie v. Future Services General Trading & Contracting Company, W.L.L.*,

102 F. Supp. 3d 172, 175 (D.D.C. 2015) (quoting D.C. Code § 13–334(a)).   If "a plaintiff fails

to serve the foreign corporation in the District" in a manner prescribed, he is " 'foreclosed from

benefiting from the statute's jurisdictional protection.' "   *Id*. at 175-76 (quoting *Gonzalez v.

Internacional de Elevadores, S.A.*, 891 A.2d 227, 232 (D.C. 2006) (cleaned up)); *see Erwin-

Simpson*, 985 F.3d at 889 ("[S]ection 13-334(a) [is] a service of process statute that D.C. courts

have interpreted to confer personal jurisdiction[.]").   Because HPHC was served process in

Canton, Massachusetts, *see* Return of Service/Affidavit, ECF No. 8, and the docket contains no return of service for Point 32Health, Defendants are "not subject to general jurisdiction in the District" in any event.   *Erwin-Simpson*, 985 F.3d at 890.

## B.   Specific Jurisdiction

As relevant here, the District of Columbia's long-arm statute permits a court to "exercise personal jurisdiction over a person" when "a claim for relief aris[es] from the person's . . . causing tortious injury in the District of Columbia by an act or omission in the District of Columbia," D.C. Code § 13–423(a)(3), or "by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia," *id*. § 13–423(a)(4).[3]   Unlike general jurisdiction, specific jurisdiction "covers defendants less intimately connected with a State, [and] only as to a narrower class of claims."   *Ford*, 141 S.Ct. at 1024.   Specific jurisdiction "requires 'a relationship among 'the defendant, the forum, and litigation,' " *Shatsky v. Palestine Liberation Org.*, 955 F.3d 1016, 1036 (D.C. Cir. 2020) (citation omitted), and the "claims 'must arise out of or relate to the defendant's contacts' with the forum," *Ford,* 141 S. Ct. at 1025 (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*, 137 S. Ct. 1773, 1780 (2017)).   In other words, there must exist "a relationship among the defendant, the forum, and the litigation such that the defendant's suit-related conduct create[s] a substantial connection with the forum."   *Urquhart-Bradley v. Mobley*, 964 F.3d 36, 44 (D.C. Cir. 2020) (cleaned up).

---

[3]  "Person" includes "a corporation . . . or any other legal or commercial entity."   D.C. Code § 13-421.

Although Plaintiff alleges that HPHC "caused tortious injury by actions committed" both "within" and "outside" the District, Am. Compl. at 10, the developed record plausibly establishes that the alleged defamation occurred "outside the District of Columbia," § 13–423(a)(4), and that Defendants do not regularly conduct business or otherwise engage in a persistent course of conduct in the District, *supra* at 6.   Therefore, asserting specific jurisdiction hinges in part on whether Defendants "derive[ ] substantial revenue from goods used or consumed, or services rendered, in the District of Columbia."   D.C. Code § 13–423(a)(4).   Plaintiff *surmises* that HPHC "receives more than hundreds of thousands of dollars in revenue from at-risk [third-party] insured groups and purchasers of its PPO type insurance policies," Pl.'s Opp'n at 12, the latter he acknowledges "allow patients to see any provider they would like in the continental USA including D.C.," Am. Compl. at 29; *see id*. at 36 ("Defendants derive substantial revenue from insurance policies that are used in D.C.").   Whereas Defendants *attest* that HPHC does not have a contractual relationship with health care providers in the District nor offer or underwrite insurance policies in the District, *supra* at 6, and the requirement that Defendants have "purposefully established minimum contacts in the forum . . . ensures that [they] will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, . . . or of the unilateral activity of . . . a third person."   *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal quotation marks omitted).

Even if Defendants had "purposefully availed" themselves "of the privilege of conducting" insurance activities in the District, *Vantage Commodities Financial Services I, LLC v. Assured Risk Transfer PCC, LLC*, 321 F. Supp. 3d 49, 57 (D.D.C. 2018), quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958), this lawsuit for defamation and related claims of reputational

harm is not premised on HPHC's commercial activities but rather on its report of insurance fraud

submitted to the Insurance Fraud Bureau in Massachusetts and the ensuing federal prosecution of

Plaintiff in the State of Massachusetts.   Thus, there is no plausible connection to the District of

Columbia, much less a "substantial" one, to support this Court's asserting specific jurisdiction

over Defendants.

### C.  Motion to Amend Complaint

Although courts should "freely give leave [to amend a complaint] when justice so

requires," Fed. R. Civ. P. 15(a)(2), a denial is appropriate "if the amended pleading would not

survive a motion to dismiss," *In re Interbank Funding Corp. Securities Litigation*, 629 F.3d 213,

218 (D.C. Cir. 2010), under Federal Rule of Civil Procedure 12, *Pinson v. U.S. Department of

Justice*, 2022 WL 703924, at *3-4 (D.D.C. 2022).   *See Foman v. Davis*, 371 U.S. 178, 182

(1962) (listing "futility of amendment" among reasons to deny leave).

Plaintiff moves to amend the complaint to "[a]dd facts to conform to the evidence" and

"a new claim of "[a]ttempted extortion," and to "[m]odify Count 6 to add DC Consumer

Protection Procedures Act (DC 3904)."   Mot. to Amend Compl., ECF No. 42 at 1.   He argues

that the proposed Verified 2nd Amended Complaint exceeding 2,100 pages, ECF No. 42 at 8-86

and ECF Nos. 42-1, 42-2, 42-3, "will facilitate a proper decision *on the merits*[.]"   Mot. at 3

(emphasis added).   But, as discussed above, the Court cannot bind Defendants to a decision on

the merits when it lacks personal jurisdiction, and the proposed second amended complaint does

not remedy the jurisdictional defect.   Therefore, Plaintiff's motion to amend the complaint is

denied.

### D.    Motion for Sanctions

Finally, Plaintiff moves for sanctions against defense counsel for "making unwarranted legal contentions and patently false factual contentions" in Defendants' reply brief.   Mot. for Sanctions, ECF No. 46 at 5; *see id*. at 2-3 (listing statements).   The motion is unfounded.

Courts may impose sanctions if "a pleading, written motion, or other paper . . . [is] presented for any improper purpose[;] . . .   the claims, defenses, and other legal contentions therein are [un]warranted by existing law[;] . . .   the allegations and other factual contentions have [no] evidentiary support[; or] the denials of factual contentions are [un]warranted on the evidence[.]"   Fed. R. Civ. P. 11(b).   The Court applies "an objective standard of reasonable inquiry on represented parties who sign papers or pleadings."   *Bus. Guides, Inc. v. Chromatic Commc'ns Enters*., 498 U.S. 533, 554 (1991).   Rule 11 is designed to ensure that allegations made in filings "are supported by a sufficient factual predicate at the time that the claims are asserted."   *City of Yonkers v. Otis Elevator Co*., 106 F.R.D. 524, 525 (S.D.N.Y. 1985) (emphasis removed).   As such, Rule 11 "states unambiguously that [the attorney] must conduct a 'reasonable inquiry' or face sanctions."   *Bus. Guides*, 498 U.S. at 548.

In deciding a Rule 11 motion, courts consider (1) whether each presenting attorney "conducted a reasonable inquiry," (2) whether each presenting attorney "determined that [the] papers filed with the court are well grounded in fact [and] legally tenable," and (3) whether the papers were "interposed for any improper purpose."   *Cooter & Gell v. Hartmarx Corp*., 496 U.S. 384, 393 (1990).   Courts do not impose Rule 11 sanctions lightly; rather, such sanctions are "an extreme punishment for filing pleadings that frustrate judicial proceedings."   *Henok v. Chase Home Fin*., *LLC*, 926 F. Supp. 2d 100, 104 (D.D.C. 2013) (cleaned up); *see Cobell v.*

11

*Norton*, 211 F.R.D. 7, 10 (D.D.C. 2002) (The purpose of Rule 11 "is to protect the court from

frivolous and baseless filings that are not well grounded, or brought with the purpose of

vexatiously multiplying the proceedings.")   "As such, the Court has the discretion to determine

both whether a Rule 11 violation has occurred and what sanctions should be imposed if there has

been a violation."   *Id*. (cleaned up).

Plaintiff takes issue with defense counsel's well-grounded statements gleaned from the

criminal indictment, *see* Defs.' Opp'n to Pl.'s Mot. for Sanctions, ECF No. 48 at 6-8 and Ex. A

(Indictment), which provide all the "evidentiary support" required of Rule 11(b)(3).   *Lucas v.*

*Duncan*, 574 F.3d 772, 777 (D.C. Cir. 2009).   A "Rule 11 motion is not a proper substitute for a

dispositive motion, and thus should not be used," as Plaintiff does here, "to convert a

disagreement over the factual allegations and legal arguments in a plaintiff's complaint [or

criminal indictment] into a sanctions dispute."   *Smith v. Athena Construction Group, Inc.,* 2023

WL 11914917, at *2 (D.D.C. 2023) (cleaned up); *cf*. Pl's Mot. at 4 ("Defense Counsel should be

sanctioned for intentionally making the baseless legal contention that Dr. Merchia's being the

medical director, or a controlling agent, or even the 'sole controlling agent' (which he was not) at

CPAP ClinicalServices LLC's made him the owner of CPAP ClinicalServices LLC[.]") *with*

Indictment, ECF No. 32-1 at 2 (alleging generally that "Merchia controlled, owned, and/or

operated numerous sleep medicine entities, including . . . CPAP Clinical Services, LLC").

## CONCLUSION

For the foregoing reasons, the Court concludes (1) that it lacks personal jurisdiction over

Defendants, (2) the proposed amendments to the operative complaint are futile, and

(3) Defendants have not committed sanctionable conduct and, therefore, dismisses the complaint

and this case.   A separate order accompanies this Memorandum Opinion.


                                    _____/s/_____

                                      RUDOLPH CONTRERAS

Date:   December 20, 2024                 United States District Judge